**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 15-0098-WS** |
| | ) | |
| **HUNTER BENJAMIN VANDERLINDE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on the defendant's motion to suppress.  (Doc. 22).
The parties have filed briefs in support of their respective positions, (Docs. 22, 24, 25, 34,
35), and the Court has conducted an evidentiary hearing.  After careful consideration, the
Court concludes that the motion is due to be denied.

## BACKGROUND

The defendant is charged with three counts of distribution, and possession with
intent to distribute, controlled substances on or about January 10, 2014.  (Doc. 1).  The
defendant was approached by law enforcement officers on that date at a local gas station.
During the encounter, the officers found cocaine on the defendant's person.  The
defendant then gave consent for the search of his residence.  The search revealed
marijuana and more cocaine.  The defendant was then advised of his *Miranda* rights but
waived them and gave incriminating statements.

The defendant argues he was arrested immediately upon his exit from his vehicle,
at which time law enforcement lacked probable cause to arrest him.  The defendant
argues the invalid arrest irretrievably taints all three subsequent discoveries of
contraband, as well as his incriminating statements.  The government argues that the
encounter began as a *Terry* stop supported by reasonable suspicion and that the cocaine
on the defendant's person was discovered in the course of a *Terry* patdown.  Because the
initial discovery was by lawful means, the government concludes that the defendant's

consent to a search of his residence is valid and that the contraband found there, and the defendant's incriminating statements thereafter, are admissible.  In the alternative, the government argues that probable cause to arrest existed as soon as the defendant exited the vehicle.

## FINDINGS OF FACT

The Court granted the defendant's request for an evidentiary hearing in order to determine the facts and the legal standard to be applied.  Based on the evidence presented at the hearing, the Court makes the following findings of fact material to the motion to suppress.

In January 2014, Lee Laffitte was a corporal with the Mobile Police Department, working narcotics.  For several months, Laffitte had worked with a confidential informant whom Laffitte considered reliable, based on information the informant had provided regarding stash houses and deliveries of cocaine into the area.  At approximately 9:00 a.m. on January 10, 2014, the informant advised Laffitte that he or she had dealt in the past with a white male known to the informant as "Hunter."  The informant stated that Hunter makes trips to Atlanta to purchase cocaine for resale and that he would arrive at a particular gas station at about 2:00 p.m. that day to deliver the informant four ounces of cocaine acquired in Atlanta.  The informant described Hunter as a white male a little shorter than Laffitte (who is six feet even), with a scruffy beard and short hair.  The informant said Hunter would be driving a small, green Ford truck.

Before 2:00 p.m., Laffitte and the informant communicated to confirm that the drug deal was still on.  Shortly before 2:00, seven to ten officers arrived at the gas station, which is located at a prominent intersection.  Some were positioned in unmarked vehicles in the parking area, others were positioned inside the gas station.  At approximately 3:20 p.m., Laffitte was on the phone with the informant, asking if the suspect was going to show.  The informant, who was in a vehicle at the intersection, responded that the suspect was just then crossing the intersection towards the gas station.  Laffitte at that moment

observed the vehicle driven by the defendant cross the intersection and pull into the gas station parking area.

The defendant was driving a small Ford truck.  Photographs of the vehicle reflect both green and blue tones.  The defendant exited the vehicle, and Laffitte observed that he was a little shorter than Laffitte and had short hair and a scruffy beard.

At that time, Laffitte ordered the units stationed at the gas station to take the defendant down.  All officers present responded, identified themselves, and took the defendant to the ground.  The officers handcuffed the defendant, assisted him to his feet, and remained there.  At that time, Laffitte approached the defendant and asked the defendant his name.  When the defendant responded, "Hunter," Laffitte conducted a patdown for weapons, in the course of which he felt a bulge in the defendant's front left pocket consistent with cocaine.  Laffitte extracted a clear plastic sandwich bag from the pocket, which contained what proved to be approximately four ounces of cocaine.  The search of the defendant's residence occurred approximately five minutes after the encounter at the gas station.

## DISCUSSION

"[A]n officer does not violate the Fourth Amendment by conducting a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  *Moore v. Pederson*, ___ F.3d ___, 2015 WL 5973304 at *5 (11th Cir. 2015) (internal quotes omitted).  This is known as a "*Terry* stop," which is "a type of seizure under the Fourth Amendment."  *Id*.  A reasonable suspicion must be "based on objective facts," which is more than an "inchoate and unparticularized suspicion or hunch."  *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007) (internal quotes omitted).

However, "[t]he standard of 'reasonable suspicion' that is required to justify a *Terry* stop is significantly more lenient than that of 'probable cause' ...."  *Moore*, 2015 WL 5973304 at *5.  "Reasonable suspicion is a less demanding standard than probable

cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). In particular, the Supreme Court in one case "assumed that the unverified tip from the known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a *Terry* stop." *Id.* (describing *Adams v. Williams*, 407 U.S. 143 (1972)).

In *Adams*, an officer patrolling a high-crime area after midnight was approached by a person known to him, who "informed him that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist." 407 U.S. at 145. The Supreme Court held that reasonable suspicion supported the officer's conduct in approaching the defendant and commencing a *Terry* encounter. "The informant was known to him personally and had provided him with information in the past. … The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint had [the officer's] investigation proved the tip incorrect. Thus, … the information carried enough indicia of reliability to justify the officer's forcible stop of [the defendant]." *Id.* at 146-47.

A tip from a "known informant" supports reasonable suspicion because the informant's "reputation can be assessed" and because she "can be held responsible if her allegations turn out to be fabricated." *Florida v. J.L.*, 529 U.S. 266, 270 (2000). Even a tip from an anonymous informant can support reasonable suspicion if there are sufficient indicia of reliability, for example, if the tipster "accurately predict[s] future behavior" or "explain[s] how he kn[o]w[s] about" the illegal activity; such circumstances tend to support a reasonable belief that the informant "has knowledge of concealed criminal activity." *Navarette v. California*, 134 S. Ct. 1683, 1688 (2014).

It is unnecessary to identify the bare minimum required for an informant's tip to support reasonable suspicion, because the circumstances of this case rise far above that threshold, and the question is not at all close.  Laffitte did not receive his information from an anonymous, faceless tipster but from an informant with whom he had worked for several months and who had provided reliable information about criminal activity in the past.  Nor did the informant slip into the shadows after providing the tip; instead, he or she remained actively engaged in the operation, exposing himself or herself to repercussions should the tip prove unfounded.  Moreover, the informant both explained how he or she knew about the defendant's illegal activity and provided an accurate prediction of the defendant's future behavior.

The defendant's efforts to counter this heavy showing of reliability are futile.  He challenges the substance of the tip by suggesting Laffitte testified only that the informant said the defendant "could" bring cocaine to the gas station.  He challenges the basis of the tip by noting that Laffitte did not mention the Atlanta connection at a state preliminary hearing.  He challenges the informant's continued participation in the operation by pointing out that Laffitte did not mention this conduct in state court testimony.  He challenges the informant's predictive powers by noting the defendant showed up only after the predicted time of arrival.  He challenges the informant's descriptive powers by insisting that the defendant's truck was blue rather than green and that scruffy facial hair is something different than a scruffy beard.  And he challenges the informant's specificity by arguing his or her description of the defendant was so vague that any number of persons could have been detained based upon it.

The Court, having heard Laffitte's testimony and observed his demeanor at the evidentiary hearing, finds his testimony credible and rejects the defendant's challenges based on asserted inconsistencies with prior testimony.  Laffitte may have used the term "could" once at the state preliminary hearing, but he used the unequivocal "would" and like phrasing repeatedly – including at the preliminary hearing and in his contemporaneous report.  He did not mention in state court the informant's continued

participation in the operation after his or her initial tip, but he was asked no questions that would have called on him to do so.  And while he did not mention Atlanta in his state court testimony, the questioning did not plainly implicate the defendant's Atlanta history,[1] and in any event defense counsel cut off Laffitte's response before he had finished it.  (Doc. 27 at 15).

The Court also rejects the defendant's challenges based on asserted defects in the informant's predictive and descriptive prowess.  The defendant did show up 80 minutes after the time first predicted by the informant six hours earlier, but Laffitte testified without challenge to the rather intuitively obvious proposition that drug deals (like much else in life) commonly run late.  More significant is that the defendant did show up, at the place and in the vehicle predicted.  The defendant has spent an inordinate amount of time and ink arguing over the truck's color, but it is clear from the photographs that it partakes of both blue and green hues; indeed, defense counsel elicited exactly that testimony from Corporal Bailey at the evidentiary hearing.  Similarly, any perceivable distinction between scruffy facial hair and a scruffy beard does nothing to undermine the reliability of the informant's tip.  And given that the informant identified in real time the exact vehicle at issue, his or her description of the defendant could not possibly be impermissibly vague.

Under the authorities cited above, the informant's tip and the attendant circumstances provided reasonable suspicion that the defendant was engaged in criminal activity.  That reasonable suspicion rendered it permissible for law enforcement to institute a *Terry* encounter.  The question becomes whether, before the cocaine was discovered on the defendant's person (at which time probable cause to arrest unquestionably existed), the detention of the defendant advanced beyond a *Terry* stop into an arrest.  "There is a difference between an investigative stop of limited duration for

---

[1] Laffitte was not asked what the informant said about where the cocaine came from; instead, he was asked what the informant said about how he or she knew the cocaine would be delivered to the gas station.  A reasonable witness could understand this ambiguous question to focus on the delivery itself and not antecedent matters such as the source of the cocaine.

which reasonable suspicion is enough, and a detention that amounts to an arrest for which probable cause is required," and "[t]he difference is one of extent." *United States v. Acosta*, 363 F.3d 1141, 1145-46 (11ᵗʰ Cir. 2004). "To assist us in more objectively drawing the line between a *Terry* stop and an arrest in an individual case, we apply four non-exclusive factors. These factors are: the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention." *Id*. at 1146 (internal quotes omitted).[2]

Beginning with the fourth factor, the total time elapsed from initiation of the encounter to discovery of the cocaine is measured in mere seconds – all the time required for the officers to put the defendant on the ground, handcuff him, raise him to his feet, and pat him down. The first factor asks whether the officers "utilized brief, minimally intrusive investigation techniques," and the third addresses whether they "were diligent in pursuing their investigation." *Acosta*, 363 F.3d at 1146. These factors also indicate a *Terry* stop, because the cocaine was discovered during a patdown for weapons during those first few seconds, before any investigation could even begin.[3]

---

[2] The defendant, who offers no relevant legal authority, does not identify any other factors or request that they be employed.

[3] The defendant argues that the patdown did not occur immediately but some time later – after he had been placed in Laffitte's vehicle, then brought back out for the purpose of a patdown. The argument is based on testimony Laffitte gave on cross-examination at the state preliminary hearing regarding the chronology of events. Laffitte testified at the evidentiary hearing that he was confused at the preliminary hearing and that the patdown actually occurred as soon as Laffitte arrived on the scene. The Court accepts this version of events, based on its observation of Laffitte at the evidentiary hearing, on Laffitte's consistent testimony on direct examination at the preliminary hearing, and on Corporal Bailey's consistent testimony at the evidentiary hearing.

Nor would the defendant's position be improved were the Court to accept his argument, since it is clear that, even under his preferred version, the patdown occurred within about a minute of the encounter's inception. This is confirmed by the unchallenged evidence that, within five minutes after the encounter was initiated, the cocaine had been found on the defendant's person, Laffitte had asked the defendant if he would consent to a search of his residence, the

"Under the third factor we ask whether the scope and intrusiveness of the detention exceeded the amount reasonably needed by police to ensure their personal safety." *Acosta*, 363 F.3d at 1146.  The defendant's only argument is that the use of handcuffs necessarily transformed the encounter into an arrest, but that is not the law.  On the contrary, "this Court has said the fact that police handcuff the person or draw their weapons does not, as a matter of course, transform an investigatory stop into an arrest." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995); *accord Acosta*, 363 F.3d at 1147; *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000); *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989); *United States v. Kapperman*, 764 F.2d 786, 790 n.4 (11th Cir. 1985).

"The Supreme Court has stated that officers may take reasonable steps to ensure their safety so long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Acosta*, 363 F.3d at 1146  (internal quotes omitted).  Thus, "during an investigatory stop, an officer can still handcuff a detainee when the officer reasonably believes that the detainee presents a potential threat to safety." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1306 (11th Cir. 2006).  The nature of the suspected crime (money laundering of drug proceeds) in *Acosta* justified the officers' drawing a gun on the defendant without converting the stop into an arrest.  363 F.3d 1142, 1147.  Likewise, the nature of the suspected crime (cocaine trafficking) in *Hastamorir* supported a reasonable belief the defendant presented a potential threat to officer safety and justified the officers' handcuffing the defendant "as a reasonable action designed to provide for the safety of the agents" without converting the stop into an arrest.  881 F.3d at 1553, 1557.  Laffitte testified he is concerned about weapons when encountering a drug suspect, especially a cocaine trafficking suspect.  That belief is

---

defendant had consented and signed the necessary paperwork, the parties had traveled to his residence, and the search had begun.

articulable and objectively reasonable,[4] and due to it the officers' handcuffing of the defendant did not transform the encounter into an arrest.

Under the authorities cited above, the encounter between the defendant and law enforcement was a *Terry* stop that did not ripen into an arrest until some point after cocaine was discovered on his person, at which time probable cause existed to support an arrest.  Thus, none of the contraband or incriminating statements are the fruit of an unlawful arrest, and the motion to suppress, which rests on the premise of an unlawful arrest, must fail.

**CONCLUSION**

For the reasons set forth above, the defendant's motion to suppress is **denied**.

DONE and ORDERED this 21st day of October, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] The Eleventh Circuit has "frequent[ly] observ[ed] that weapons constitute virtually indispensable tools of the drug trade."  *United States v. Wilson*, 183 F.3d 1291, 1304 (11th Cir. 1999).